# In the United States Bankruptcy Court for the Southern District of Georgia
## Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Adversary Proceeding |
| J. E. DEVENISH BREBNER | ) | |
| (Chapter 7 Case Number <u>10-41881</u>) | ) | Number <u>10-4092</u> |
| | ) | |
| *Debtor* | ) | |
| | ) | |
| BENJAMIN R. ROACH | ) | |
| As Trustee of the Estate of | ) | |
| J. E. Devenish Brebner | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J. E. DEVENISH BREBNER | ) | |
| and | ) | |
| JACQUELINE BREBNER | ) | |
| | ) | |
| *Defendants* | ) | |

## MEMORANDUM AND ORDER

Debtor Devenish Brebner filed a Chapter 7 bankruptcy case on September 2, 2010. Jacqueline Brebner, his wife, is not a co-debtor and has not filed bankruptcy separately. At the time Debtor's case was filed the husband and wife were owners of a piece of residential property located at 114 San Marco Drive on Tybee Island in Savannah, Georgia. The home is located on a desirable piece of real estate fronting a tidal creek with

expansive views of marsh, river and a partial view of the Atlantic Ocean. It is attractive, well-constructed, well-maintained and has a dock in excellent condition. Because of financial reversals this couple has suffered they have been unable for a period of at least six months to make the monthly mortgage payments on the home. It was scheduled for non-judicial foreclosure which triggered the filing of this Chapter 7 case, the sole purpose of which was the Debtor's desire to sell the property, pay their creditors, and retain what they believe would be significant proceeds to assist in their achieving a fresh start.

Husband and wife purchased this site as vacant land and built a custom home on it slightly over ten years ago. Because of their desire to downsize as their children matured and faced entry into college to obtain advanced education they decided to place the house on the market in September 2009. They initially dealt with one realtor but within a short time switched their listing to Bonnie Gaster, a long-time successful realtor specializing in island property. The listing price was approximately $789,000.00, but the property was subject to only a handful of showings during the first year and in August 2010 the price was reduced to $677,000.00. Even that reduction resulted in no offers in the months leading up to the filing of the bankruptcy case. Because Ms. Gaster was very familiar with the property and because of her expertise in the area, the Debtors were hopeful that she would be employed by the Chapter 7 Trustee to continue to market the property and after consultation between them and the approval of the Court, she was employed by the Trustee to market the property.

In her consultations with Mr. Roach, the Trustee, Ms. Gaster decided, based on recent sales activity, that the home should be substantially reduced and recommended a listing price of $438,000.00. That decision occurred immediately after the filing of the case and by the time the creditors' meeting was held on October 7, 2010, an offer of $401,000.00 for the purchase of the home had been tendered. The Trustee agreed to that subject to this Court's approval.

The Debtor and his wife were, to say the least, shocked to learn of the substantial price reduction and the speed at which the Trustee agreed to propose a sale of the property. The Trustee's Motion to Sell the property was filed on October 5, 2010, and came on for a hearing on November 8, 2010. Because the wife is not a co-debtor and as a result of the objection she filed, the parties and the Court concluded that the matter could not proceed under motion practice, but needed to be considered under the provisions of 11 U.S.C. § 363(f). The Trustee's adversary proceeding seeking relief under that section was filed on December 15, 2010, answered on December 16, 2010, and came on for trial January 4, 2011.

The contract originally had an earlier closing date but now contemplates a closing no later than January 15, 2011. In order to clarify the parties' rights, the parties agreed to a trial on shortened notice and the Court agreed to conduct a hearing on the same schedule.

The Husband objects to the sale believing that the substantial reduction and the proposed sale of $401,000.00 is not sufficient to realize the fair market value of the property even in the distressed market conditions currently being experienced in Tybee Island real estate. Wife joins in that objection and further contends that the elements of § 363(h) has not been established. In summary, the transaction, if approved at $401,000.00, would yield proceeds, after payment of the first mortgage on the property of some $175,000.00, expenses of sale, Trustee's commissions, the Debtor's exemption and all unsecured claims, of approximately $100,000.00. The wife contends that because of the huge equity cushion in the property given a secured debt of under $200,000.00, unsecured debt of $45,000.00 and a proposed sale price of $400,000.00, there is absolutely no risk to creditors in rejecting this sale and marketing the property over a more extended period of time in order to achieve a higher price. Because all the proceeds after payment of the expenses which are clearly not at risk would go to the Debtor and his spouse, the non-debtor spouse contends that the benefit of a sale at this level confers no benefit to unsecured creditors which will not occur if the marketing effort is extended. In contrast, she contends all of the detriment will be suffered by her by selling the property now at what she believes is below the property's fair market value.

The Court heard expert testimony from Ms. Gaster, from Glenda Gannem, and from Sue Bentley who is the realtor representing the interests of the purchaser. All of them have extensive experience in the real estate profession, are well respected for their expertise and their testimony was quite enlightening. Having heard their testimony I

conclude that the two most revealing comparables to the subject property are located at 208 Catalina Drive and 123 Catalina Drive. The property at 208 Catalina Drive sold in a distress situation for $365,000.00. It is a smaller house, not in as good a condition as the subject property, has a dock in poor condition, but is situated on a creek which is considered deep water in that it has water sufficient to navigate a small recreational vessel at all stages of the tide. Adjusting for these factors suggest that the proposed sale is not outside the realm of reasonableness. The other comparable at 123 Catalina Drive is not located on either deep or tidal water, but has an easement for access to a dock, is slightly larger than the subject property and is essentially brand new. It sold for $497,000.00 and adjusting for the superior homesite the subject property enjoys because of its dock and access to a tidal creek, that comparable suggest that a price higher than the proposed sale would be appropriate.

Ms. Gaster's testimony was persuasive that given the multitude of factors in recommending a listing price to the Trustee, she came to a reasonable recommendation of $438,000.00. However, inherent in any assessment of what listing price should be arrived at, the degree of urgency attached to a proposed sale and the time frame in which a sale must be concluded is important. Ms. Gaster believed that if given as long as 90 to 120 days the property could be marketed at some figure in the high $400,000.00 range, under $500,000.00. When the Trustee suggested that it was necessary or desirable to move the real estate faster, she appropriately reduced the listing price in order to generate more activity in the market. When the offer of $401,000.00 was submitted, Ms. Gaster attempted to determine whether it would be useful for the Trustee to make a counteroffer and ultimate concluded that the

purchasers would not favorably entertain a counteroffer. Based on that she recommended and the Trustee proceeded with his current sale motion.

After reflection on the testimony before the Court, the comparables and other relevant factors, I conclude that the sale will not be approved. Trustees serving in Chapter 7 cases are fiduciaries and are as such required to act in the best interests of the estates that they administer. Mr. Roach is an able Trustee and has always adhered to the highest levels of professionalism required of a Trustee and this conclusion should in no way be interpreted as diminishing the reputation and respect he has earned. However, in virtually every case that has come before this Court in recent memory, the decision of a Chapter 7 Trustee to sell has been made in the context of real estate which reveals one or more of the following characteristics: (1) a minimal equity which is being eroded by accrual of interest to the detriment of unsecured creditors; (2) lack of maintenance of the premises leading to diminution of value because of deterioration, negligence or worse; or (3) lack of cooperativeness by debtors who are occupying the home. Certainly, in the current environment where real estate prices are plunging and most borrowers are heavily over-leveraged, virtually every sale the trustees are required to effectuate demand quick action in order to preserve what little equity might be salvaged for creditors.

This case stands alone and unique in the sense that even given the terrible erosion in property values, the Debtor still has a substantial equity margin in his home with secured debt of $175,000.00 or less and unsecured debt of approximately $45,000.00.

℁AO 72A
(Rev. 8/82)

6

Marketing this property over a more extended period of time in order to achieve a better price, even with the interest accrual over that period of time, will have no conceivable adverse impact on the rights of creditors to be paid one hundred cents on the dollar. Debtor and his wife have exhibited nothing less than the utmost concern for maintaining the property and there has been no suggestion of any lack of cooperation on their part in allowing the property to be marketed or shown to prospective purchasers. The home represents the only asset of value which they have and the detriment to the non-debtor wife resulting from a failure to achieve the maximum possible price within a reasonable time is substantial, especially in contrast to the remote, if not nonexistent, risk that unsecured creditors will not ultimately be paid in full.

The Debtor and his wife have been fully advised by counsel, however, that there is no certainty as to when this home will be sold or what price it will ultimately be sold for and they therefore are placing at risk the certainty of a sale at this level which would pay them significant proceeds. Nevertheless, they believe that denial of this Motion and permitting Ms. Gaster to effectuate marketing over a more extended period of time is reasonably calculated to enhance their recovery and they are willing to assume that risk. This Court agrees. There is no comparable risk to creditors.

It is therefore the conclusion of this Court that the Trustee's adversary complaint seeking an order to permit this sale of the Debtor's property, together with the interest of the wife who is a co-owner but not a debtor, is DENIED. The Trustee's

previously filed Motion for sale of the property likewise is DENIED. The Trustee, the Debtor, Debtor's wife and their counsel, are ORDERED to confer in good faith with each other and with Ms. Gaster in an effort to arrive at a mutually agreeable marketing plan for this property. The Court will be available to participate in or to attempt to mediate that process if there is a joint request for the same, but will not insist upon its involvement if the parties can reach an agreeable conclusion concerning marketing within fifteen days from the entry of this Order.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 13th day of January, 2011.